UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#
DATE FILED: 3/27/14

------------------------------------------------------------------------x

FRANK VESSA,                                                    :
                                                               :
                              Plaintiff,                        :
                                                               :
                    - against -                                 :
                                                               :
THE CITY OF WHITE PLAINS, THE CITY OF WHITE    :
PLAINS POLICE DEPARTMENT, DETECTIVE LT.        :
ERIC FISCHER, CHIEF BRADLEY, POLICE OFFICERS:
"JOHN DOE and MARY DOE 1-10," said names being  :
fictitious and presently unknown, WESTCHESTER    :
COUNTY, and "JOHN ROE and MARY ROE 1-10,"       :
said names being fictitious and presently unknown,  :
persons intended being assistant district attorneys   :
and/or personnel of WESTCHESTER COUNTY,          :
                                                               :
                              Defendants.                       :
------------------------------------------------------------------------x

**OPINION AND ORDER**
12-CV-6989 (ER)

Ramos, D.J.:

      Plaintiff Frank Vessa ("Plaintiff" or "Vessa") brings this action against Defendants the

City of White Plains (the "City"), the City of White Plains Police Department ("WPPD"),

Detective Lieutenant Eric Fischer ("Fischer"), Chief Bradley ("Bradley"), Police Officers John

Doe and Mary Doe 1-10 (the "John Doe Defendants"), Westchester County (the "County"), and

John Roe and Mary Roe 1-10 (the "John Roe Defendants") (collectively, "Defendants"), stating

claims pursuant to 42 U.S.C. § 1983 for violations of Plaintiff's First, Fourth and Fourteenth

Amendment rights, as well as state law claims for intentional infliction of emotional distress and

defamation.[1]  Presently before the Court are the City and County Defendants' motions to dismiss

the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  Docs. 27, 28.

For the reasons set forth below, Defendants' motions to dismiss are GRANTED.

---

[1] At the April 25, 2013 pre-motion conference, Plaintiff voluntarily withdrew the following four claims:  (i)
violations of the Eighth Amendment; (ii) conversion; (iii) malicious prosecution; and (iv) respondeat superior.  *See*
Min. Entry April 25, 2013.

## I.    Factual Allegations

The following facts are taken from the allegations in the Amended Complaint, which the Court accepts as true for purposes of this motion.[2]  *Famous Horse Inc. v. 5th Ave. Photo Inc.*, 624 F.3d 106, 108 (2d Cir. 2010).

Plaintiff alleges that on June 21, 2011, officers of the WPPD (i.e., the John Doe Defendants) and "police officers, assistant district attorneys and/or officers" of the County (i.e., the John Roe Defendants) entered Plaintiff's family's residence in Thornwood, New York (the "Residence") "pursuant to a search warrant."  Am. Compl. (Doc. 23) ¶¶ 59-67.[3]  Plaintiff claims that the search warrant was wrongfully obtained by unspecified Defendants on "improper, fraudulent and invalid grounds."[4]  *Id.* ¶¶ 68-69.  Specifically, Plaintiff claims that Defendants failed to thoroughly investigate and corroborate "the credibility of informants [and] complainants" and failed to validate or confirm the information upon which they negligently and

---

[2] The Court notes that the Amended Complaint contains a total of 179 paragraphs; however, the large majority of the allegations are duplicative and repetitive.  Indeed, of the 179 paragraphs, only a handful contain relevant facts supporting Plaintiff's purported claims.  The Court further notes that the Amended Complaint fails to clearly articulate and identify the causes of action upon which Plaintiff's claims are based.  Accordingly, as it is difficult to discern from the face of the Amended Complaint the claims upon which Plaintiff's action is based, the Court analyzes only those claims that are raised and discussed in the parties' papers.

[3] Defendants object to Plaintiff's reliance on the Amended Complaint filed on March 15, 2013, Doc. 24, as Plaintiff was directed to file the Amended Complaint on March 13, 2013.  *See* Min. Entry Feb. 13, 2013.  Although Plaintiff's counsel attempted to file an Amended Complaint on March 13, it was rejected due to a "filing error." Doc. 23.  Plaintiff thereafter filed an Amended Complaint on March 15, Doc. 24, which Plaintiff asked the Court to deem as timely.  *See* Reply Declaration of Greg A. Ribreau ("Ribreau Decl.") (Doc. 39), Ex. 1.  However, in making such a request, Plaintiff failed to inform the Court that the Amended Complaint filed on March 15, 2013 contained three entirely new paragraphs (¶¶ 169-171) that were not contained in the version he attempted to file on March 13, 2013.  *Compare* Docs. 23 and 24.  As these allegations were not contained in the version of the Complaint filed on the March 13, 2013 deadline, the Court will not consider them on Defendants' motions to dismiss.  Moreover, the Court notes that the additional paragraphs purport to allege certain customs or policies on the part of the City and County, in an apparent attempt by Plaintiff to salvage his *Monell* claims against these municipal Defendants. However, even if the Court were to consider these newly-added claims of alleged municipal customs or practices, it would not change the Court's determination, discussed *infra*, that Plaintiff has failed to state a Section 1983 claim against any of the Defendants because his allegations fail to allege an underlying constitutional violation.

[4] Plaintiff does not specify in the Amended Complaint which of the Defendants engaged in each individual act of alleged misconduct.  Rather, Plaintiff generally alleges that all "defendants" engaged in every act of alleged misconduct.  *See, e.g.*, Am. Compl. ¶¶ 68-79, 97-103, 107-109, 118-121, 125-134, 143, 158.

erroneously obtained the warrant.  *Id.* ¶ 75.  According to Plaintiff, the information upon which Defendants obtained the warrant was fabricated and otherwise based upon conjecture and speculation, and Defendants knew or should have known that the information was false.  *Id.* ¶¶ 76-77.  Plaintiff also alleges that Defendants wrongfully executed the warrant "during the early morning hours, in the presence . . . of [Plaintiff's] wife and young child and various neighbors and strangers, seriously and severely frightening, terrorizing, humiliating and embarrassing the plaintiff, causing the infliction of emotional and mental distress."  *Id.* ¶ 70.

Plaintiff claims that in executing the warrant, Defendants illegally seized Plaintiff's property, including his electronics, computers, iPad, external hard drive, and four "off-duty" firearms.[5]  *Id.* ¶¶ 97-100.  Plaintiff further claims that at the time of the alleged illegal search, Defendants told him that his electronics and computers were being seized due to an investigation of Plaintiff concerning three anonymous postings on the Journal News website regarding Mayor Bradley leaving office as Mayor of White Plains.  *Id.* ¶ 158.  The comments were posted under the screen name "ltfischer," and included:  (i) "You're welcome from the WPPD"; (ii) "Next Up Commissioner Chong GTHO"; and (iii) "Figure it out Yourself."  *Id.*

Subsequent to the search and seizure, Plaintiff alleges that Defendants knowingly charged him with criminal offenses "of which he was wholly innocent," causing Plaintiff to be suspended from his employment as a police officer.  *Id.* ¶¶ 107-109.  Thereafter, in or around July 2011, the charges against Plaintiff "failed to be verified" and, as a result, Plaintiff's suspension was lifted.  *Id.* ¶¶ 110-111.  Plaintiff further claims that Defendants caused an illegal investigation to be initiated against him by various governmental law enforcement agencies.  *Id.* ¶ 143.

---

[5] Although Plaintiff alleges in the Amended Complaint that Defendants repeatedly refused Plaintiff's requests for the return of his property, at the April 25, 2013 pre-motion conference, Plaintiff's counsel admitted that the seized property had, in fact, been returned to Plaintiff and, accordingly, withdrew Plaintiff's claim for conversion.  *See* Min. Entry April 25, 2013.

Moreover, Plaintiff claims that in or around June and July 2011, Defendants knowingly made false and defamatory statements about him. *Id.* ¶¶ 125-127.  Specifically, Plaintiff alleges that Defendants—and Defendant Fischer "in particular"—made the following false and defamatory statements:  (i) that Plaintiff "was involved in kiddy porn," which was discovered on Plaintiff's computers; (ii) that Plaintiff was a "pedophile"; (iii) that Plaintiff "was guilty of criminal impersonation"; (iv) that Plaintiff "was guilty of forgery"; and (v) that Plaintiff "was having an illicit affair with [a female officer]." *Id.* ¶¶ 129-134.

## II.    Legal Standard

When ruling on a motion to dismiss pursuant to Rule 12(b)(6), district courts are required to accept as true all factual allegations in the complaint and to draw all reasonable inferences in the plaintiff's favor. *Famous Horse Inc.,* 624 F.3d at 108.  However, this requirement does not apply to legal conclusions, bare assertions or conclusory allegations. *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 681 (2009) (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)).  In order to satisfy the pleading standard set forth in Rule 8 of the Federal Rules of Civil Procedure, a complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*  Accordingly, a plaintiff is required to support its claims with sufficient factual allegations to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.*

## III.   Plaintiff Fails to State a Section 1983 Claim[6]

---

[6] The City and County Defendants have separately moved to dismiss all of Plaintiff's claims against them.  As noted above, Plaintiff fails, for the most part, to identify which Defendant engaged in each of the alleged illegal acts. Rather, Plaintiff generally alleges that the alleged wrongful acts were committed by "defendants, their servants, agents, police officers, chiefs, detectives, district attorney, assistant district attorneys, investigators and/or employees." *See supra* n.4.  Accordingly, as the Amended Complaint fails to distinguish between the City and County Defendants, the Court analyzes the Defendants' motions to dismiss together.

Plaintiff brings a Section 1983 claim for alleged violations of his First, Fourth and Fourteenth Amendment rights.  The crux of Plaintiff's action is that the execution of the search warrant on June 21, 2011 constituted an "unreasonable search and seizure" in violation of his Fourth Amendment rights, in that Defendants wrongfully obtained the warrant using fabricated information that Defendants knew or should have known was false.  Am. Compl. ¶¶ 68-69, 75-77.  Plaintiff also contends that Defendants' actions caused his "speech to be chilled" in violation of his First Amendment rights and constituted an "abuse of process" in violation of Plaintiff's Fourteenth Amendment rights.[7]  *Id.* ¶¶ 144, 159.

### a.  Against Defendants Fischer and Bradley

To the extent that Plaintiff seeks to hold Defendants Fischer and Bradley liable for his constitutional claims, those claims are dismissed as against them.  Case law is clear that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983."  *Rahman v. Fisher*, 607 F. Supp. 2d 580, 585 (S.D.N.Y. 2009) (citation omitted).  Here, the Amended Complaint is completely devoid of any allegation that Defendants Fischer or Bradley had *any* involvement in the alleged constitutional violations. Indeed, *none* of the facts alleged in support of Plaintiff's constitutional claims even reference Defendants Fischer and Bradley by name.  Rather, Plaintiff merely repeatedly alleges that the wrongful acts were committed by "defendants, their servants, agents, police officers, detectives, chiefs, district attorney, assistant district attorneys, investigators and/or employees."  Such vague

---

[7] Plaintiff asserts for the first time in his opposition papers that Defendants violated his Due Process rights in violation of the Fourteenth Amendment.  *See* Pl.'s County Mem. L. Opp. (Doc. 36) at 25, Pl.'s City Mem. L. Opp. (Doc. 38) at 23-24.  Although Plaintiff erroneously suggests that the Amended Complaint states a Due Process claim, the Due Process Clause is not cited or mentioned *anywhere* in the Complaint.  Plaintiff's mere passing reference to the Fourteenth Amendment is clearly insufficient to state a Due Process claim absent *any* allegations that Defendants did, in fact, violate Plaintiff's Due Process rights.  Accordingly, as Plaintiff cannot amend his complaint in his opposition papers, *Tomlins v. Vill. of Wappinger Falls Zoning Bd. of Appeals,* 812 F. Supp. 2d 357, 363 n.9 (S.D.N.Y. 2011), Plaintiff has failed to allege a Due Process claim and the Court therefore declines to analyze any such purported claim on Defendants' motions to dismiss.

allegations are clearly insufficient to establish "personal involvement" on the part of Defendants Fischer and Bradley and, accordingly, such claims as against them must be dismissed.

In an attempt to avoid dismissal of his Fourth Amendment claim against Fischer and Bradley, Plaintiff argues in his opposition papers that "the individual City defendants participated in and facilitated th[e] fraud," acting "in concert with the D.A.'s office from beginning to end" in order to "reach their goal of humiliating plaintiff, suspending him and confiscating his on-duty and personal weapons." Doc. 38 at 4. With respect to Defendant Fischer, Plaintiff claims that Fischer believed that Plaintiff made the anonymous postings under the screen name "ltfischer" and that Fischer opened an Internal Affairs investigation to determine who authored the anonymous postings. *Id.* at 5. Thus, according to Plaintiff, it is reasonable to assume that Fischer caused the illegal warrant to be issued in order to search Plaintiff's house to determine whether he, in fact, posted the alleged anonymous comments. *Id.*

In support of this argument, Plaintiff purports to rely upon several extraneous documents, including: (i) a printout from the WPPD indicating that an Internal Affairs investigation was opened by Fischer in March 2011; and (ii) Plaintiff's counsel's affirmation in connection with an earlier, related state-court petition. *See* Affirmation of Patrick Mullaney ("Mullaney Aff.") (Doc. 35), Exs. M, L. Plaintiff baldly contends, without citation to any case law or specific allegations within the Amended Complaint, that these documents are "incorporated/integral" to the Amended Complaint, and may therefore be considered by the Court on Defendants' motions to dismiss. Doc. 38 at 3. Contrary to Plaintiff's assertion, however, the Court may not consider either of the documents upon which Plaintiff relies. With respect to the WPPD "printout," Mullaney Aff., Ex. M, that document is not referenced *anywhere* in the Amended Complaint and, thus, cannot be considered on a motion to dismiss. *Cf. DiFolco v. MSNBC Cable L.L.C.,*

622 F.3d 104, 111 (2d Cir. 2010) (holding that a court may consider documents incorporated in the complaint by reference).  Although Plaintiff contends—again, without citation to case law—that the Court may take judicial notice of his counsel's affirmation filed in the state court proceeding, *see* Mullaney Aff. ¶ 15, case law is clear that courts may take judicial notice of a document filed in another court "*not for the truth of the matters asserted* in the other litigation, but rather to establish the fact of such litigation and related filings."  *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir. 1998) (internal quotation marks and citation omitted) (emphasis added).  Plaintiff relies upon his attorney's prior affirmation, not to establish the "fact of" the prior state court proceeding, but rather, as support for his assertion that Fischer stated at a WPPD meeting that he opened an Internal Affairs investigation "and was going to get the guy who made the postings."  Doc. 38 at 3.  Accordingly, the Court does not consider the above-mentioned documents on Defendants' motions to dismiss.[8]

        In further support of his argument, Plaintiff contends that it is "obvious" that Fischer was the "complainant" who "relay[ed] the information of the alleged crime to the police and ultimately to the D.A." because the warrant allows for the search and seizure of "all documentation, either in tangible or computer data . . . concerning '*Eric Fischer*.'"  Doc. 38 at 5;

---

[8] The Court notes that even if it were to consider these documents, they in no way prove the allegations for which Plaintiff cites to them.  The printout from the Police Department's website simply appears to indicate that Fischer made an incident report to the Internal Affairs Department on March 1, 2011; it does not appear to suggest that the report referred to the anonymous postings at issue or to Plaintiff himself.  Mullaney Aff., Ex. M.  With respect to Plaintiff's counsel's affirmation, although Plaintiff relies upon it in support of his assertion that Fischer made certain statements at a WPPD meeting, the affirmation merely states—without citation to *any* evidence—that "several disinterested witnesses . . . *will testify* that Lieutenant Fischer announced at a Detectives meeting that an 'official Internal Affairs investigation has been opened to determine who made the anonymous postings on the Journal News website.'"  Mullaney Aff., Ex. L at 4-5 (emphasis added).  Plaintiff's counsel's unsubstantiated assertion that several "disinterested witnesses" *will* testify to Fischer's actions clearly does not demonstrate or prove that Fischer did, in fact, make the alleged statements at issue.

*see* Loomba Aff., Ex. D (Search Warrant Order) (emphasis added).[9]  Contrary to Plaintiff's contention, however, that the warrant permits members of the District Attorney's office to seize documentation concerning Defendant Fischer does not necessarily suggest that Fischer himself had any involvement whatsoever in procuring the warrant, nor does it suggest, assuming Fischer did procure the warrant, that he did so using fraudulent and deceptive means.[10]  Accordingly, as Plaintiff's allegations that Defendant Fischer "participated in and facilitated [the] fraud" in order to "humiliat[e] plaintiff" are based on nothing more than rank speculation and unsubstantiated allegations, Plaintiff's Fourth Amendment claim against Fischer must be dismissed.

Finally, with respect to Defendant Bradley, Plaintiff relies upon hearsay statements purportedly made by members of the District Attorney's office while executing the warrant indicating that the "problem" was between Plaintiff and one of his "supervisors."[11]  Doc. 38 at 6. Plaintiff further references a statement by third-party Lieutenant Fitzmaurice, who allegedly told Plaintiff that he was confiscating Plaintiff's guns because "the chief is concerned that you may hurt yourself."  *Id.*  Plaintiff contends that these statements indicate that "Chief Bradley directly participated in the events prior to, and including, the search warrant being executed by the DA's office."  *Id.*  Alternatively, Plaintiff argues that even assuming Bradley did not directly participate in the alleged violation, "he certainly was well aware of Lt. Eric Fischer and the

---

[9] The Court may consider the Search Warrant Order, as it is clearly incorporated in the Amended Complaint by reference.  *See* Am. Compl. ¶¶ 62, 69, 73-78, 131.  Indeed, the crux of Plaintiff's case is that Defendants wrongfully obtained the warrant at issue using fabricated and unsubstantiated information.

[10] The Court notes that the warrant states that there is "reasonable cause to believe that a search of the [Residence] will reveal evidence of violations of New York Penal Law Articles 170 (Forgery and Related Offenses) and 190 (Other Frauds), specifically Forgery in the second Degree . . . and Criminal Impersonation . . . ."  Loomba Aff., Ex. D.

[11] Plaintiff testified to these hearsay statements during his examination pursuant to Section 50-h of the New York General Municipal Law.  *See* Mullaney Aff., Ex. H at 27:2-12, 45:15-24.  As Plaintiff's 50-h examination was explicitly referenced in the Complaint, *see* Am. Compl. ¶ 88, the Court may consider it on Defendants' motions to dismiss.

Westchester County District Attorney's Office's actions in securing the illegal search warrant and in the illegal searching of plaintiff's home and seizing of his computers" and failed to stop Fischer's "campaign against the plaintiff." *Id.* at 6-7.

The Court finds that Plaintiff has failed to state a Fourth Amendment claim against Defendant Bradley. First, Plaintiff fails to include *any* allegations in the Amended Complaint indicating that Bradley provided false and misleading information to the judge who issued the warrant or that Bradley had any involvement in obtaining the warrant. Indeed, far from alleging a plausible Fourth Amendment claim against Bradley, the Amended Complaint does not contain a *single* allegation concerning Bradley's role in the alleged wrongful acts giving rise to *any* of Plaintiff's claims. Rather, the only allegations concerning Bradley merely refer to the fact that Bradley was employed by the City as a police officer at all times relevant to Plaintiff's allegations. *See* Am. Compl. ¶¶ 17, 29, 37-40. Finally, with respect to the hearsay statements upon which Plaintiff relies in opposition to Defendants' motions to dismiss, those statements simply do not support Plaintiff's contention that Bradley was either personally involved in obtaining the warrant or was aware of the other Defendants' actions in obtaining the warrant. Moreover, even assuming Plaintiff was able to demonstrate that either Defendant Fischer or Bradley was involved in procuring the warrant, he has failed to allege any facts from which the inference can be drawn that in obtaining the warrant, either Defendant knowingly provided the court with false or fabricated information.

With respect to Plaintiff's First Amendment claim—addressed in more detail below—Plaintiff argues that he has successfully stated such a claim against Fischer and Bradley because the Complaint "sufficiently alleged" that Fischer and Bradley "personally participated" in obtaining the search warrant "from which all of plaintiff's family computers were unlawfully

seized, and which operated as a prior restraint of his First Amendment rights to free speech and free expression." Doc. 38 at 10. However, for the reasons set forth above, contrary to Plaintiff's contention, he has *not* "sufficiently alleged" that Fischer and Bradley were personally involved in procuring the warrant permitting Defendants to search the Residence. Accordingly, as Plaintiff's entire theory of liability with respect to his First Amendment claim against Bradley and Fisher is based upon their alleged involvement in obtaining the warrant, and as the Court finds that Plaintiff has failed to allege *any* personal involvement on the part of Bradley and Fisher, Plaintiff's First Amendment claim against them must also be dismissed.

Accordingly, as the Amended Complaint is completely bereft of any allegations concerning the individual Defendants' participation in the alleged constitutional violations,[12] Plaintiff's claims against them are dismissed.

### b. Municipal Defendants

As Plaintiff concedes, a municipality cannot be held liable under § 1983 for the acts of its employees solely on a theory of *respondent superior*. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978). A Section 1983 claim against a municipality can only be sustained if the action that is alleged to be unconstitutional was the result of an official policy or custom. *Id.* However, "*Monell* does not provide a separate cause of action for the failure by the government to train its employees; it *extends* liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation." *Segal v. City of New York,* 459 F.3d 207, 219 (2d Cir.

---

[12] With respect to Plaintiff's abuse of process claim, the Amended Complaint does not include a single allegation that Fischer and Bradley participated in the acts giving rise to that claim, nor does Plaintiff argue in his opposition papers that Fischer and Bradley had any personal involvement in those allegations. Accordingly, the abuse of process claim—discussed in detail *infra*—is similarly dismissed as against Fischer and Bradley in light of Plaintiff's blatant failure to include any allegations concerning their "personal involvement" in the alleged acts upon which that claim is based.

2006).  Accordingly, under Second Circuit case law, a prerequisite to municipal liability under *Monell* is an underlying constitutional violation by a state actor.  *Id.*  Thus, once a "district court properly [finds] no underlying constitutional violation, its decision not to address the municipal defendants' liability under *Monell* [is] entirely correct."  *Id.*

For the reasons set forth below, the Court finds that because Plaintiff has failed to allege an underlying constitutional violation by a state actor, his Section 1983 claims against the City and County Defendants must fail.

### 1.   Fourth Amendment Claim

It is well-established that "all persons have a right to be free from arrest, search and seizure except on probable cause or pursuant to warrant."  *Bancroft v. City of Mount Vernon*, 672 F. Supp. 2d 391, 401 (S.D.N.Y. 2009).  There are three requirements for a valid search warrant: (i) the warrant must be issued by a "neutral, disinterested magistrate"; (ii) the person seeking the warrant must establish "probable cause to believe that the evidence sought will aid in a particular apprehension or conviction for a particular offense"; and (iii) the warrant must "particularly describe the things to be seized, as well as the place to be searched."  *Lynch v. City of Mount Vernon*, 567 F. Supp. 2d 459, 464-65 (S.D.N.Y. 2008) (quoting *Dalia v. United States*, 441 U.S. 238, 255 (1979)) (internal quotation marks and brackets omitted).  Where a warrant is obtained, a magistrate's "determination that probable cause exists to support the issuance of a warrant is entitled to 'great deference' from a reviewing court."  *Id.* at 465 (citing, *inter alia*, *United States v. Leon*, 468 U.S. 897 (1984)).  Under this highly deferential standard of review, a plaintiff challenging a warrant for lack of probable cause "faces a heavy burden."  *Rivera v. United States*, 928 F.2d 592, 602 (2d Cir. 1991).

Plaintiff's Fourth Amendment claim is based on the allegation that the warrant was not

11

supported by probable cause because it was fraudulently obtained using fabricated information that Defendants knew or should have known was false.  Am. Compl. ¶¶ 68-69, 75-77.  To establish that a warrant was issued on less than probable cause, a plaintiff must plead facts sufficient to show that the officer who procured or executed the warrant "knowingly and intentionally, or with reckless disregard for the truth, made a false statement in his affidavit and that the allegedly false statement was 'necessary to the finding of probable cause.'"  *Golino v. City of New Haven*, 950 F.2d 864, 870-71 (2d Cir. 1991) (quoting *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978)).  Thus, a plaintiff must make a "*substantial* preliminary showing" that the affiant knowingly and intentionally, or with reckless disregard for the truth, made a false statement in applying for the warrant.  *Rivera*, 928 F.2d at 604 (citing *Franks*, 438 U.S. at 155-56) (emphasis added).  "Unsupported conclusory allegations of falsehood or material omission cannot support a [ ] challenge [to the validity of the warrant]"; rather, the plaintiff must make "specific allegations" supported by evidence.  *Velardi v. Walsh*, 40 F.3d 569, 573 (2d Cir. 1994) (holding that a Section 1983 plaintiff challenging a warrant on the basis that the defendants intentionally misled the judge who issued the warrant must make the same showing that is required at a suppression hearing under *Franks v. Delaware*, 438 U.S. 154 (1978)).

Here, the Amended Complaint is completely devoid of any specific factual allegations sufficient to give rise to an inference of deceit or recklessness on the part of Defendants.  Rather, Plaintiff merely relies on bald allegations that unspecified "defendants" obtained the warrant on "improper" and "fraudulent" grounds," failed to validate or confirm the information upon which they based their application for the warrant, and knew or should have known that the information upon which the warrant was obtained was fabricated and otherwise based upon conjecture and speculation.  Am. Compl. ¶¶ 68-69, 75-77.  Such "unsupported conclusory allegations of

12

falsehood" are utterly insufficient to state a claim that Defendants obtained the warrant using false or fabricated statements.  Indeed, Plaintiff fails to include *any* factual allegations about the purported false statements, including the false statements themselves, the identity of the person who made the false statements, how the statements were false, or even that the false statements were necessary to the judge's finding of probable cause.  Moreover, even though Plaintiff suggests that it "was not possible for [him] to set forth in his Amended Complaint the specific false or misleading statements contained in the relevant . . .  affidavits,[13] as plaintiff has never possessed or viewed them," Doc. 38 at 4, he nevertheless fails to set forth any allegations supporting his purported *belief* that Defendants obtained the warrant using false or fabricated information.  Accordingly, as Plaintiff has failed to allege sufficient factual matter to state a plausible claim for unreasonable search and seizure under the Fourth Amendment, his *Monell* claim must be dismissed.[14]

### 2.  First Amendment Claim

Plaintiff alleges that on June 21, 2011, the date that the warrant was executed, Plaintiff was informed by Defendants this his property was seized

> due to an investigation of Plaintiff regarding three anonymous postings on the Journal News website regarding Mayor Bradley leaving office as Mayor of White Plains, and posted under the

---

[13] Although Plaintiff repeatedly suggests that multiple affidavits were submitted to the judge who issued the warrant, the warrant clearly states that only *one* affidavit—submitted by Criminal Investigator Andrew Grascia—was filed in support of the application for the warrant.  Loomba Aff., Ex. D.

[14] In his opposition papers, Plaintiff sets forth additional allegations in support of his Fourth Amendment claim, including that:  (i) "a search warrant was presented by Grascia, investigator with the District Attorney's office, to White Plains City Court Judge Eric Press for signing . . . despite the fact that Plaintiff does not reside in White Plains"; (ii) the warrant "purposely omitted the facts that the home of [Plaintiff] was the premises to be searched and that the complainant was a lieutenant in the WPPD, in an effort to further mislead the signing Judge"; and (iii) the warrant was "executed by members of the District Attorney's Office (rather than the WPPD) which is not the usual procedure." Doc. 36 at 12.  Even assuming Plaintiff included factual support for these newly-raised conclusory allegations—he does not—they nevertheless do not compel a different outcome.  None of the additional allegations contain sufficient factual matter from which the inference can be drawn that Defendants knowingly, or with reckless disregard for the truth, made false statements in applying for the warrant.

> screen name 'ltfischer' as follows: 'You're welcome from the
> WPPD'; 'Next up Commissioner Chong GTHO'; 'Figure it out
> yourself.'

Am. Compl. ¶ 158.  Plaintiff further alleges that as a result of the foregoing, Plaintiff's "speech

was caused to be chilled."  *Id.* ¶ 159.

Although the basis of Plaintiff's First Amendment claim is not entirely clear from the

face of the Amended Complaint, Plaintiff argues in his opposition papers that "when the

defendants illegally and improperly seized plaintiff's computers from his home, his access to the

internet was restrained and restricted, and his ability to freely express himself was chilled, in

violation of his First Amendment rights."  Doc. 36 at 20; *see also* Doc. 38 at 8-11.  In making

such an argument, Plaintiff relies on Supreme Court precedent that is *entirely* inapplicable and

inapposite from the situation at issue here.  Indeed, the cases upon which Plaintiff relies concern

the "procedural safeguards [that] must be employed before expressive materials can be seized as

'obscene.'"  *Fort Wayne Books, Inc. v. Indiana*, 489 U.S. 46, 62 (1989) (holding that the seizure

of "literally thousands of books and films," which are "presumptively protected by the First

Amendment," was improper prior to any determination that the books and films were

"obscene"); *accord Maryland v. Macon*, 472 U.S. 463, 468 (1985) (holding that the First

Amendment imposes "special constraints on searches for and seizures of presumptively

protected material," including "allegedly obscene films, books, and papers").

Here, Plaintiff's computer and other electronic devices are clearly not "presumptively

protected material" comparable to the books and films at issue in the above-cited cases.  Plaintiff

merely complains that Defendants' seizure of his computer "chilled" his access to the internet;

such an argument is essentially akin to saying that "Defendants have taken away my pen and

now I cannot write."  Plaintiff does not—because he cannot—cite any authority in support of this

novel and completely untenable theory of liability.  Moreover, Plaintiff does not allege that he

was arrested or subject to an order prohibiting him from using the internet or otherwise publicly

expressing himself, or that he was precluded from using a computer other than the one that was

seized.  Accordingly, as the theory of liability for Plaintiff's First Amendment claim has no basis

in either fact or law, it must be dismissed.

### 3.   Abuse of Process

In support of his purported malicious abuse of process claim, Plaintiff alleges that

Defendants caused or directed a "prolonged and on-going false, fraudulent, fabricated,

unwarranted, baseless, groundless and illegal investigation of the plaintiff by various government

law enforcement agencies," and that such actions constituted an "egregious abuse of process,

power and authority."  Am. Compl. ¶¶ 143-144.  In his opposition papers, Plaintiff offers an

alternative theory of liability for his abuse of process claim, based upon Defendants' alleged

actions in obtaining a search warrant "with improper motive and intent to do harm, in order to

harass/embarrass Plaintiff and to help WPPD defendants [] suspend him."  Doc. 36 at 19.

Although the Court is not required to consider Plaintiff's new theory of liability, raised for the

first time in his opposition papers, *see Tomlins,* 812 F. Supp. 2d at 363 n.9, the Court

nevertheless finds that Plaintiff fails to state a claim for abuse of process under *either* proposed

theory of liability.

Under New York law, "a malicious abuse of process claim lies against a defendant who

(1) employs regularly issued legal process to compel performance or forbearance of some act (2)

with intent to do harm without excuse o[r] justification, and (3) in order to obtain a collateral

objective that is outside the legitimate ends of the process."  *Savino v. City of New York*, 331

F.3d 63, 76-77 (2d Cir. 2003) (quoting *Cook v. Sheldon*, 41 F.3d 73, 80 (2d Cir. 1994)).

15

Malicious abuse of criminal process also supports liability under Section 1983.  *Id.*  The Second

Circuit has noted that the torts of malicious prosecution and abuse of process are "closely allied";

whereas malicious prosecution concerns the improper issuance of process, "the gist of abuse of

process is the improper use of process after it is regularly issued."  *Cook*, 41 F.3d at 80 (internal

quotation marks, brackets and citations omitted); *accord Dean v. Kochendorfer*, 237 N.Y. 384,

390 (N.Y. 1924) ("To show that regularly issued process was perverted to the accomplishment of

an improper purpose is enough.").

　　　Here, Plaintiff's bare allegations are utterly insufficient to state a claim for malicious

abuse of process.  First, although Plaintiff vaguely refers to an ongoing "illegal investigation," he

does not claim that Defendants employed *any* legal process with respect to that alleged

investigation.  *Cook*, 41 F.3d at 80 ("[L]egal process means that a court issued the process, and

the plaintiff will be penalized if he violates it.") (citation omitted).  Moreover, Plaintiff fails to

allege that the investigation was undertaken with intent to harm and for the purpose of obtaining

a collateral objective outside the legitimate ends of the process.  With respect to Plaintiff's

newly-advanced theory, the legal "process" Plaintiff alleges was abused was the application for

and issuance of the warrant for the search of the Residence.  However, because the Court has

already determined that Plaintiff has failed to overcome the "heavy burden" required to

successfully challenge the validity of the warrant, *see infra* pp. 11-13, Plaintiff's abuse of

process claim must similarly fail.  *See Smolicz v. Borough/Town of Naugatuck*, No.  04 Civ. 855

(WWE), 2006 WL 2085291, at *10 (D. Conn. July 25, 2006), *aff'd*, 281 F. App'x 32 (2d Cir.

2008).  Moreover, Plaintiff does not allege that Defendants improperly executed the warrant or

used it for a purpose other than one for which the law created it.  *See id.*; *see also Kaminski v.*

*Hayes*, 06 Civ. 1524 (CFD), 2009 WL 3193621, at *9 (D. Conn. Sept. 30, 2009) ("Although

[plaintiff] claims that there was insufficient probable cause to apply for and issue the search warrant based on the false allegations of [defendants], he does not allege that the warrant was issued for a purpose other than one for which the law created it.  Accordingly, the claim for abuse of legal process is dismissed.").  Although Plaintiff alleges that Defendants acted with an "improper motive" and with intent to harass and embarrass him in obtaining the warrant, such allegations do not suggest that Defendants acted with an ulterior *purpose* or *objective*, but merely with an improper *motive*, which is not actionable.  *See Savino*, 331 F.3d at 77 ("[T]he New York Court of Appeals has made clear that '[a] malicious motive alone . . . does not give rise to a cause of action for abuse of process.'") (citation omitted).  Accordingly, as Plaintiff has failed to state a claim for abuse of process under either theory advanced, his abuse of process claim is dismissed.[15]

## IV.    Plaintiff's State Law Claims

Where, as here, all federal claims are eliminated before trial, the "traditional 'values of judicial economy, convenience, fairness, and comity'" weigh in favor of declining to exercise supplemental jurisdiction over any remaining state law claims.  *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350, 350 n.7 (1988)).  Having dismissed all federal claims asserted in the Amended Complaint, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims.  28 U.S.C. § 1367(c)(3).  Therefore, Plaintiff's claims for defamation and intentional

---

[15] Plaintiff's reliance on *Lukowski v. Cnty. of Seneca*, No. 08 Civ. 6098 (MAT), 2009 WL 467075, at *8 (W.D.N.Y. Feb. 24, 2009), is misplaced, as there, the court based its holding that Plaintiff adequately pled all three elements of his abuse of process claim on the fact that plaintiffs "alleged that defendants used the subpoena for anything other than obtaining testimony and documents from plaintiffs, which are the purposes for which a subpoena is used." Accordingly, the court held that Plaintiff adequately alleged that defendants' use of the subpoenas constituted "'collateral objectives' outside the legitimate ends of the process." *Id.*  Here, unlike in *Lukowski*, Plaintiff does *not* allege that the search warrant was used for any purpose other than the purpose for which it was issued; i.e., to search Plaintiff's Residence and seize the property described in the warrant.

infliction of emotional distress are DISMISSED without prejudice.

**V.    Conclusion**

For the reasons set forth above, Defendants' motions to dismiss are GRANTED.  The

Clerk of the Court is respectfully directed to terminate the motions and close this case.  Docs. 27,

28.

It is SO ORDERED.

Dated:    March 27, 2014
          New York, New York

                                        _____
                                        Edgardo Ramos, U.S.D.J.